# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CHRIS COLEMAN, | ) |
| | ) |
| Movant, | ) |
| | ) Civil No. |
| v. | ) 4:11-cv-00260-FJG |
| | ) |
| UNITED STATES OF AMERICA | ) Criminal No. |
| | ) 4:07-cr-00317-FJG-1 |
| | ) |
| Respondent | ) |

## ORDER

Currently pending before the Court is Movant Chris Coleman's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct His Sentence (Doc. No. 1).

**I.  Background**

On September 12, 2007, a grand jury indicted Movant Chris Coleman ("Movant" or "Petitioner") on two counts of a seven count indictment (Doc. No. 1). Count One charged Petitioner with conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base (Doc. No. 1). Count Seven charged Petitioner with aiding and abetting others in possession of five or more grams of cocaine base with intent to distribute (Doc. No. 1). On August 25, 2008, Petitioner proceeded to trial (Doc. No. 161). The Government's witnesses included Elmo Brown and Petitioner's Co-Defendant Cornelius Robinson (Doc. No. 161 & 163). Petitioner was the sole witness for the defense (Doc. No. 163). A jury found Petitioner guilty on Count One and Count Seven (Doc. No. 170 & 171). On February 12, 2009, Petitioner was sentenced to life imprisonment on Count One and 480 months on Count Seven, to be served concurrently (Doc. No. 191). Petitioner appealed his conviction to the Eighth Circuit

Court of Appeals and the Court upheld the conviction. United States v. Coleman, 584 F.3d 1121 (8th Cir. 1009).

Now, before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct the Sentence under 28 U.S.C. §2255. Petitioner claims ineffective assistance of counsel based on the following: (1) counsel's alleged failure to interview and/or call available defense witnesses other than Petitioner; and (2) counsel's alleged failure to properly cross-examine Government witnesses. (Doc. No. 1).

## II.     Standard of Review

In order to successfully establish an ineffective assistance of counsel claim, Petitioner must show: (1) trial counsel's performance was so inefficient as to fall below an objective standard of reasonable competence; and (2) the performance prejudiced Petitioner's defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To determine prejudice, there must be proof of a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A court need not decide if counsel was inefficient if there is no showing of sufficient prejudice. Id. at 687. See also McCauley-Bey v. Delo, 97 F.3d 1104 (8th Cir. 1996). A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. Strickland, 466 U.S. at 690. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id.

## III.    Discussion

Petitioner's first claim for ineffective assistance of counsel stems from counsel's alleged failure to interview and/or call to testify available defense witnesses other than Petitioner. Petitioner states that defense counsel consistently stated in discussions before and during pre-trial hearings that she expected to call approximately three to five

witnesses. However, Petitioner asserts that defense counsel never contacted these witnesses or attempted to interview them. Petitioner states that counsel's failure to call these witnesses was detrimental to his case as the testimony of his wife Cherry Coleman, employers Andy and Shannon Holmes, cousin and Co-Defendant Courtney Baker, and friend Jericka Tate, would have produced a different outcome at trial. Specifically, these witnesses would have testified that Petitioner maintained lawful employment, did not participate in cocaine sales, and was not involved in any of the controlled buys conducted by undercover police officers. This testimony would have served to impeach the Government's main witnesses, Robinson and Brown. As such, failure to call Mrs. Coleman, Andy Holmes, Shannon Holmes, Courtney Baker, and Jericka Tate prejudiced Petitioner. (Doc. No. 1, 2, 23, & 32).

Petitioner's second claim for ineffective assistance of counsel stems from counsel's alleged failure to effectively cross-examine Government witnesses, Robinson and Brown. Specifically, Petitioner states counsel failed to impeach Robinson through prior inconsistent statements in which Robinson, during an arrest in December 2006, stated that his main drug supplier was someone other than Coleman. Yet, when arrested in June 2007, Robinson stated that Coleman was his supplier. Furthermore, Petitioner states counsel failed to impeach Robinson and Brown regarding statements the two made that Jericka Tate was the mother of Coleman's child and that Coleman manufactured and distributed cocaine from Tate's home during the winter of 2006. Coleman states Ms. Tate did not live at her residence until spring 2007 and had defense counsel properly investigated or cross-examined Robinson and Brown, Coleman would have been exonerated. (Doc. No. 1, 2, 23, & 32).

The Government argues Petitioner's claims are without merit because defense counsel's decisions were purely strategic and did not prejudice the defense. First, Coleman's wife's self-interest and relationship to Coleman would have rendered her

3

Case 4:11-cv-00260-FJG   Document 33   Filed 08/01/12   Page 3 of 8

testimony not credible. Second, the testimony of Coleman's employers, Andy Holmes and Shannon Holmes, would not have been able to rebut the overwhelming evidence of Coleman's involvement in the crack cocaine conspiracy. Andy Holmes and Shannon Holmes employed Coleman during daytime hours and thus, were not witnesses to Coleman's drug activities at night. Third, calling Coleman's Co-Defendant Courtney Baker would not have benefited Coleman's defense as Baker would likely have invoked his Fifth Amendment privilege. This is evident from the affidavit provided by Baker's attorney which states counsel would have advised Baker to decline to testify. Fourth, defense counsel did not call Tate because testimony from a person who allowed Coleman to cook crack at her house would have been deemed not credible. Fifth, Coleman has failed to provide more than mere conclusory allegations that the above testimony existed and was available to defense counsel. Petitioner has not provided any affidavits from Mrs. Coleman, Andy Holmes, Shannon Holmes, or Tate, in which each swear to the facts they would have testified to during trial and the affidavit provided by Baker is contrary to the facts agreed to by Baker in his plea agreement for his role in the conspiracy. (Doc. No. 23).

### A. Defense Counsel's Failure to Call Witnesses Other Than Petitioner

In conducting an analysis of whether defense counsel's failure to call certain witnesses is prejudicial, the Court must be mindful of the following: (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution. McCauley-Bey, 97 F.3d at 1106.

#### (i) Cherry Coleman

Defense counsel's alleged failure to call Cherry Coleman did not prejudice Petitioner. When an uncalled witness is married to the Defendant at the time of trial, the

witness's credibility is questionable. Wilson v. Kemna, 12 F.3d 145, 147 (8th Cir. 1994). Further, a Defendant's failure to present some evidence from an uncalled witness regarding that witness's potential testimony can be fatal to an ineffective assistance of counsel claim. Armstrong v. Kemna, 534 F.3d 857, 867-68 (8th Cir. 2008) (citing Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 2007)). Given that Cherry Coleman was married to the Defendant at the time of trial, her credibility is questionable. In addition, Petitioner has not provided an affidavit or any signed statement detailing what Mrs. Coleman's testimony would have been to the Court. As such, the Court concludes that defense counsel's alleged failure to call Mrs. Coleman to testify did not prejudice Petitioner.

### (ii) Andy Holmes & Shannon Holmes

Defense counsel's alleged failure to call Andy Holmes or Shannon Holmes did not prejudice Coleman. Andy and Shannon Holmes are credible as they are community business owners. Andy Holmes provided an affidavit stating he employed Petitioner during the time period in question and that Petitioner regularly worked during daytime hours, five to six days per week. (Doc. No. 32-1). Although this challenges some of the testimony of Robinson and Brown that Petitioner spent most of his time making narcotic sales, Brown also testified that "the times of day where there was drug dealing going on,…[were] mostly toward the end of the evening." Trial Transcript at 184, Coleman, 584 F.3d 1121 (No. 07-00317).[1] As such, the Court concludes that defense counsel's alleged failure to call Andy Holmes or Shannon Holmes to testify did not prejudice Petitioner.

---

[1] Defense counsel submitted an affidavit to the Court which states she decided not to call Andy or Shannon Holmes because they told her investigator that Chris Coleman quit his job or was working very few hours during the time period in question (Doc. No. 32-1). Defense counsel also stated that she attempted to obtain documents showing Coleman's employment hours, but was told the documents were destroyed during a fire (Doc. No. 32-1). Andy Holmes provided an affidavit to the Court which states he was "never knowingly contacted by [defense counsel]" and there had not been a fire within the company that would have prevented defense counsel from using any of Coleman's employment records for trial (Doc. No. 32-1).

5

### (iii) Courtney Baker

Defense counsel's alleged failure to call Coleman's Co-Defendant Courtney Baker to testify did not prejudice Coleman. Petitioner offers an affidavit by Baker that states, "Mr. Coleman had no knowledge of my activities that day and no involvement in the drug transaction." (Doc. No. 9). However, Baker's credibility is questionable as he would have been impeached by the prior inconsistent statements contained in his plea agreement which denote that Coleman was his supplier (Doc. No. 23). Furthermore, Baker's attorney submitted an affidavit to the Court which states counsel would have advised Baker to assert his Fifth Amendment right and refuse to testify. As such, the Court concludes that defense counsel's alleged failure to call Co-Defendant Courtney Baker to testify did not prejudice Petitioner.

### (iv) Jericka Tate

Defense counsel's alleged failure to call Jericka Tate to testify did not prejudice Coleman. The credibility of Tate's testimony is unclear. However, even if afforded full credibility, it is unlikely to have exonerated Petitioner. The Government produced multiple witnesses during trial alleging Petitioner used Tate's home to conduct his drug business. Trial Transcript at 120 & 168, <u>Coleman</u>, 584 F.3d 1121 (No. 07-00317). Specifically, these witnesses stated Petitioner cocked cocaine at Tate's home during the winter of 2006. Petitioner has provided the Court with a ledger which shows Tate did not move into her apartment until spring 2007. As such, Petitioner states this contradictory fact would have cleared Petitioner of all guilt. Nevertheless, there is no statement contradicting the allegation that Petitioner sold drugs, at any point, at Tate's home. Furthermore, the ledger that Petitioner has provided the Court has no official letterhead or signature to qualify its authenticity. Rather, it is merely a small computer-generated chart on a blank page. As such, the Court concludes that defense counsel's alleged failure to call Jericka Tate to testify did not prejudice Petitioner.

6

### B. Defense Counsel's Failure to Thoroughly Cross – Examine

Defense counsel's alleged failure to thoroughly cross-examine Government witnesses, Robinson and Brown, did not prejudice Coleman. Petitioner points to Robinson's prior statement to detectives that someone other than Coleman was his main drug supplier (Doc. No. 32). At trial, Robinson testified he did not initially name Petitioner because he was scared for his life. Trial Transcript at 124, Coleman, 584 F.3d 1121 (No. 07-00317). Robinson went on to state during trial that he now wants to get the truth out, but still remains afraid. Id. Additionally, the Eighth Circuit noted when it upheld Petitioner's conviction, "Coleman's attorney cross-examined both Robinson and Brown at length about their motivations for testifying against Coleman and the benefits they expected to receive as a result of their cooperation with the Government." Coleman, 584 F.3d at 1126. As such, defense counsel's alleged failure to thoroughly cross-examine Robinson and Brown did not prejudice Petitioner.

Given the aforementioned analysis, the Court finds that defense counsel's performance did not prejudice Petitioner.

### C. Evidentiary Hearing

No evidentiary hearing will be held in this matter because the issues raised are resolvable by the record. Furthermore, Movant will be denied a certificate of appealability. Under 28 U.S.C. § 2253(c)(2), "[a] certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." The Court finds that the issues raised by Movant do not meet this criteria.

**IV. Conclusion**

For the reasons stated above, the Court hereby **DENIES** Movant Chris Coleman's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct His Sentence (Doc. No. 1).

**IT IS SO ORDERED.**

Date: <u>August 1, 2012</u>　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge